IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANDREA D. FLAGG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:17-CV-642-RAH-SMD |
| | ) | (WO) |
| | ) | |
| COMMANDER KEITH REED, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on

September 26, 2017[2], by Andrea D. Flagg, a pretrial detainee at the Houston County Jail.

In the amended complaint, the plaintiff challenges the conditions of his confinement,

alleges deprivations of his First Amendment rights to freedom of religion and alleges

violations of his due process rights to pre-deprivation hearings.  (Doc. 11 at pp. 2-3).  The

named defendants are James Brazier, Houston County Jail Commander; Keith Reed,

former Houston County Jail Commander; Joey Holland, Houston County Jail Chaplain;

David Baker, former Houston County Jail Chaplain; the "Houston County Sheriff's

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

[2] By order of this court, the plaintiff was required to file an amended complaint and was advised that the amendment would supersede the original complaint.  (Doc. 4).

Department" and the "Houston County Jail"[3].  The plaintiff sues these defendants in their individual and official capacities and seeks relief "for every day back there, also all parties to be terminated."  (Doc. 11 at p. 4).

The defendants filed a special report (Doc. 46, Exs. 1-6) and a supplemental special report (Doc 53, Ex. 1), which included relevant evidentiary materials in support of this report, specifically affidavits and prison documents, addressing the claims presented by Flagg.   In these documents, the defendants deny they acted with deliberate indifference to Flagg's physical needs, deny that they have violated his First Amendment rights to religious freedom and deny that they failed to provide him hearings prior to placing him in disciplinary segregation.  Furthermore, the defendants raise the defense of exhaustion in their special report.  (Doc. 46 at pp. 6-8).  Indeed, the Prison Litigation Reform Act ("PLRA") requires that "inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit."  *Jones v. Bock,* 549 U.S. 199, 202 (2007).  Thus, the defendants argue that because the Houston County Jail utilizes a grievance procedure and the plaintiff failed to file an appeal regarding any grievance underlying the allegations of his complaint, he has failed to exhaust his administrative remedies and his claims are barred.  (Doc. 46 at p. 8).

After reviewing the special report and exhibits, the court issued an order on May 3, 2018, requiring Flagg to file a response to the defendants' special report, supported by

---

[3] The Houston County Sheriff's Department and the Houston County Jail are not legal entities which can be sued under § 1983.  *See, Dean v. Barber,* 951 F. 2d 1210, 1214 (11th Cir. 1992).

affidavits or statements made under penalty of perjury and other evidentiary materials. (Doc. 54).  This order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 54 at 5).  Flagg filed responses to this order. (Doc. 62, Exs. 1-5; Doc. 111).  Pursuant to the directives of the order entered on May 3, 2018, the court now treats the defendants' special report as a motion to dismiss with respect to the failure to exhaust defense and as a motion for summary judgment as to any remaining claims and concludes that judgment is due to be granted in favor of the defendants.

## II.  STANDARD OF REVIEW

Based on the foregoing, the court deems it appropriate to treat the special report filed by the defendants as a motion to dismiss with respect to the exhaustion defense. Thus, this case is now pending on the defendants' motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (internal quotations omitted) ("[A]n exhaustion [defense]. . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a

motion for summary judgment."); *Trias v. Florida Dept. of Corrections*, 587 F. App'x 531, 534 (11th Cir. 2014) (holding that the district court properly construed Defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies[.]").

However, to the extent that the court concludes that the plaintiff has properly exhausted his administrative remedies as to any claim, the court will address those claims on summary judgment. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this

burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet the evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact).  In civil actions filed by inmates, federal courts "must distinguish between

evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage."  *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed. R. Civ. P. 56(e).  "A mere 'scintilla' of evidence supporting the supporting party's position will not suffice[.]"  *Walker v. Darby*,

911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes

involving material facts are relevant, materiality is determined by the substantive law

applicable to the case.  *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary

judgment "must do more than simply show that there is some metaphysical doubt as to

the material facts. . . .  Where the record taken as a whole could not lead a rational trier of

fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

*Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as

true "statements in [the plaintiff's] verified complaint, [any] sworn response to the

officers' motion for summary judgment, and sworn affidavit attached to that response[.]"

*Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *United States v. Stein*,

881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and

uncorroborated statements "based on personal knowledge or observation" set forth in a

verified complaint or affidavit may create an issue of material fact which precludes

summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir.

2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but

that alone does not permit [the court] to disregard them at the summary judgment stage . .

. .  Courts routinely and properly deny summary judgment on the basis of a party's sworn

testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Chamption Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Flagg's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Flagg has failed to exhaust his administrative remedies on many of his claims and that those are due to be dismissed on that basis. The court further finds that Flagg has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants on the remaining claims.

## III.  STATEMENT OF FACTS

In his amended complaint, the plaintiff alleges that from March 21, 2016, until August 30, 2017, while he was housed at the Houston County Jail, he was subjected to cruel and unusual punishment because he "was deprived of a toilet system,

mattress/blanket; running water and food on several occasions.  For seventeen months, the plaintiff was refused bathroom breaks, uniform mat/blanket; water/food; legal law work, Rammadon [sic] Fast's food 2016 and 2107 while being housed in holding cell in 1021 area 1019 and 1022.  C/O would spit in pla. Bag meals and was forced to pick feces up with his hand or refused meals by C/O's.  Check camera's in above named areas and documentation." (Doc. 11 at pp. 2-3).  Plaintiff also alleges that he was denied his First Amendment right to freedom of religion because he was "denied right to have a monthly review Rammadon [sic] two years straight 2016-2017.  Bible/Quran causing the plaintiff to become idol in this holding cell with no hope; being illegally interrogated by H.C.S.C.O. and H.C.S.D. with intergades [sic] of interrogation or intercepting communications device." (Doc. 11 at p. 3).  He also alleges violations of his due process rights because he "was illegally sentenced to disciplinary segregation time w/o a hearings, [sic] write up's, and denied hearings, also with no change of good time or any (30) day review." *Id.*  Finally, he states that he "has filed grievances through H.C.J. kiosk machine and administration thwart plaintiff's grievance process, with every attempt to exhaust remedies." *Id.*  The plaintiff sues the defendants in their individual and official capacities and seeks relief "for every day back there, also all parties to be terminated." (Doc. 11 at p. 4).

Defendant Keith Reed, who was employed by the Houston County Sheriff as the

Jail Commander of the Houston County Jail until August 1, 2017, filed an affidavit with

the Court stating as follows:

> 3.  I deny the allegations made against me by Plaintiff as being untrue and completely without basis in law or fact.  I deny that I acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.  Specifically, I deny that Plaintiff has been housed in unconstitutional conditions or deprived of any rights guaranteed to him by the U.S. Constitution.

> 4.  The Houston County Sheriff's Office operates the Houston County Jail according to a written set of policies and procedures which govern the conduct of persons employed at the jail.

> 5.  All deputies at the Houston County jail are charged with the responsibility of reporting infractions by fellow deputies and reporting any problem to the senior deputy present immediately upon learning of the problem.

> 6. I have had no indication that my jail training, policies, procedures or supervision were likely to result in violations of an inmate's constitutional rights. There is no history of abuse by correctional officers or medical staff in the Houston County Jail.

> 7.  The Houston County Jail has a grievance policy for inmates to express complaints.  When an inmate has a grievance, the inmate may submit a grievance to jail staff.  Inmates use a kiosk to submit grievances and any other types of communication to jail staff.  If a kiosk is not functioning, inmates are provided with paper forms to communicate with jail staff.  A grievance will be promptly investigated and answered by a member of jail staff.  Most grievances are answered by the grievance deputy.  Grievances of an emergency nature may be made orally and are handled immediately.  No negative action will be taken against an inmate as a result of filing a grievance.  If an inmate is dissatisfied with the response to the grievance, he or she may appeal in writing up the chain of command to the Sheriff.

> 8.  A copy of the Houston County Jail Inmate Rulebook, which contains instructions for submitting a grievance and other jail rules, is issued to each inmate

as part of the booking process. Inmates, including Plaintiff, are well aware of the grievance procedures in place in the Houston County Jail.

9. I have never received an appeal from the Plaintiff regarding any grievance that he has filed regarding this interaction. To my knowledge, the Plaintiff did not submit an appeal to a grievance to any other member of jail staff regarding any allegations contained in this lawsuit. Thus, Plaintiff has failed to follow the grievance procedure in place at the Houston County Jail.

11. Inmates at the Houston County Jail interact with jail staff multiple times a day. Thus, Plaintiff had multiple opportunities to contact members of jail staff and file a grievance or to appeal a response that he received within jail rules.

12. It is the policy of the Houston County Sheriff's Office that all inmates confined in the Houston County Jail be in compliance with all inmate rules. Inmates are aware of inmate rules through the Inmate Rulebook issued at booking. Inmate compliance with all jail rules and policies is vital for the safety, security and orderly operation of the jail.

13. It is the Houston County Jail policy to remove an inmate from normal population to segregated or administrative housing when an inmate is threatening the security or orderly operation of the facility. Inmates are housed in segregated or administrative housing both for their own protection and for the protection of other inmates and jail staff. Corrections Deputies must establish and keep control of the inmates to operate a secure facility.

14. During a portion of Plaintiff's incarceration, Plaintiff was being housed as an assault risk in administrative segregation due to his violent actions and assaults on jail staff. On numerous occasions Plaintiff had damaged jail property, refused to follow jail rules and instructions from jail deputies, and assaulted other inmates and jail deputies.

15. I have reviewed documentation concerning Plaintiff's claims. All policies and procedures at the Houston County Jail were followed by Defendants and Corrections Deputies when interacting with the Plaintiff.

16. Plaintiff was housed in many different locations in the jail in an attempt to house Plaintiff in a location where he could not harm himself, harm others or harm jail property. During the time period that Plaintiff was housed in a cell without an attached toilet, Corrections Deputies checked on Plaintiff

approximately every two hours twenty-four hours a day and gave Plaintiff the opportunity to use a toilet just outside his cell every two hours.  Plaintiff's cell also contained an emergency call button that Plaintiff could push and let officers know he needed to use the restroom.  At no time was Plaintiff denied access to a toilet or forced to use the bathroom inside of his cell.  However, on numerous occasions during Plaintiff's incarceration in a cell with access to a toilet and in a cell without access to a toilet, Plaintiff has chosen to urinate and defecate on cell floors, on cell walls and on jail property.  Plaintiff has thrown urine and feces on Corrections Deputies multiple times.

17.   Due to Plaintiff's repeated destruction of jail property and assault attempts, Plaintiff was not given a mat and blanket during the day but was provided with a mat and a blanket each night between 7 p.m. and 9 p.m.  Due to Plaintiff's repeated destruction of jail property and assault attempts, his personal papers were given to him during the hour he was rolled out of his cell each day.  Plaintiff was housed in the multi-purpose room of the jail during this hour and had access to his religious book and his personal legal paperwork.

18.   During Plaintiff's incarceration, he has never been deprived of his right to access his "legal law work" or deprived of access to religious material.

19.   It is the policy of the Houston County Sheriff's Office that inmates incarcerated in the Houston County Jail be provided with a nutritionally adequate diet.  Houston County jail food service is contracted through ABL Management, Inc. of Baton Rouge, Louisiana, a food service management company.   The Houston County Sheriff's Office provides inmate workers in the kitchen.  ABL supplies the dietician prepared and approved menus, orders the food, and provides supervision in the jail kitchen.  ABL plans the menus to exceed the calorie and nutrient allowances needed for a general adult population.  Specifically, ABL's menus for the Houston County Jail exceed the nutritional standards for males ages 19-30 leading a moderately active lifestyle.  During his incarceration, Plaintiff has never been deprived of drinking water or of an adequate diet.

20.   During Plaintiff's incarceration, he has never been denied the ability to practice his religion.  He has requested access to a Quran and a Bible and has been provided such access.  Plaintiff has never been denied the ability to participate in Ramadan and Plaintiff was given the opportunity to participate in Ramadan.  Arrangements were made with the kitchen staff at the Houston County Jail to serve Plaintiff meals consistent with the Ramadan fast including having his

evening meal served after sunset.  However, Plaintiff was observed by Corrections Deputies breaking the fast.

21.   Jail records establish that Plaintiff suffered no unconstitutional treatment while confined in the Houston County Jail.

22.   I certify and state that the records from the Houston County Jail attached to the Special Report are true and correct copies of the inmate records maintained at the Houston County jail in the regular course of business.  I am the custodian of these records.

23.   I declare under penalty of perjury that the foregoing is true and correct. I further declare that I am competent to make this declaration, and that the above statements were made by drawing from my personal knowledge of the situation.

(Doc. 49-1 at pp. 1-6).   Defendant James Brazier, who assumed the position of Jail Commander over the Houston County Jail on August 1, 2017, and prior to that served as the Assistant Jail Commander under Reed, also filed an affidavit containing statements consistent with those recited above.   (Doc. 46-4 at pp. 1-6).   Also, Defendants Joey Holland and David Baker, who have been employed by the Houston County Sheriff as Chaplains in the Houston County Jail and served as jail chaplains during a portion of the plaintiff's incarceration, filed affidavits containing statements consistent with those recited above.   (Doc. 46-5 at pp. 1-4; Doc. 46-3 at pp. 1-4).

The Houston County Jail Statement of Inmate Rules sets out the Grievance Procedure as follows:

1. Grievances are by individual inmate only.  If more than one inmate has the same grievance, each inmate must submit their own grievance.  Inmates may only submit one grievance per day.

2.  Complete the grievance providing as much detail as possible in the space provided for the inmate.  Each grievance may only address one issue and the grievance cannot contain cuss words or any disparaging comments about any person.  The grievance must be submitted within three days of the event that is the basis of the grievance.  The inmate shall state in their grievance the details and the date of the event made the basis of the grievance.  **Grievances that do not conform to policy are returned without the grievance issue being addressed.**

3.  The Grievance Deputy has 15 days to investigate and answer the grievance.

4.  **If the inmate is not satisfied with the response to the grievance, the inmate may appeal the decision using a grievance appeal form.  An appeal form may be obtained by asking sheriff's office personnel for an appeal form.  The completed grievance appeal form shall be placed in the secure box.  The appeal must be submitted within 3 days from the date the inmate is notified of the initial decision.  The sheriff's office member hearing the appeal will have 30 days to answer the appeal.**

5.  **If an inmate is dissatisfied with the response to an appeal, they may repeat the appeal procedures as detailed in item 4 until they reach their third, and final appeal.  The Jail has a three appeal process and the response to the third appeal is the final decision.**

6.  If an inmate has an emergency, he or she may make an oral request to any member of the sheriff's staff.  The sheriff staff member will immediately notify a supervisor who will investigate the emergency grievance.  An emergency is anything that affects the immediate, life, safety, or health of the inmate or the security and safety of the facility.

7.  All grievances are tracked to ensure that (1) inmate's grievances are answered; (2) inmates have followed the rules regarding filing grievances and appeals.

(Doc. 46-2 at p. 8) (Emphasis added).

Further, the Houston County Jail Statement of Inmate Rules sets out the Sanction/Discipline Procedure as follows:

Inmates who commit rules violations will be sanctioned or disciplined based on the severity of violation and history of pervious [sic] violations.  Any inmate who has more than nine previous sanctions will have all rule violations treated as discipline offenses.

Inmates who received a sanction will have certain privileges suspended for a pre-determined amount of time based upon the number of sanctions the inmate has received.

Anytime a staff member witnesses, or learns of, an inmate committing an offense warranting a sanction the staff member will complete a sanction form.

**The inmate will receive a copy of the sanction form as soon as practicable after the completion of the process.  The inmate may appeal the sanction to the Jail Commander within 1 day after receiving their notice of sanction.**

**The Jail Commander, or his designee, will answer the inmate's appeal. There is no further administrative appeal of a sanction beyond the Jail Commander.**

Inmates who receive a discipline will have their privileges suspended and receive lockdown time bases upon the type of offense the inmate committed.

Anytime a staff member witnesses, or learns of, an inmate committing an offense warranting a disciplinary the staff member will complete a disciplinary form.

**The inmate will receive a copy of the disciplinary notice as soon as practicable after the completion of the process.  The disciplinary notice will advise the inmate of the procedures, process, and what they may do.**

**The inmate will receive notice of their disciplinary hearing at least twenty-four hours prior to the hearing.  The inmate may waive their hearing by signing the Waiver of Hearing form.**

**After the disciplinary hearing and determination, the inmate may appeal the determination to the Jail Commander within 1 day after receiving their notice of the outcome of the discipline hearing.  The Jail Commander, or his designee, will answer the inmate's appeal.   There is no further administrative appeal of a discipline beyond the Jail Commander.**

(Doc. 46-2 at pp. 8-9). (Emphasis added).

Pursuant to an order of this court, the defendants also filed portions of prison records from the Houston County Jail from March 21, 2016, through August 30, 2017, documenting numerous kiosk filed complaints made by the plaintiff which are relevant to

16

the issues in this action and are categorized as grievance issues, chaplain requests, and inmate housing requests.  (Doc. 53-1 at pp. 2-10)[4].  The complaints filed by the plaintiff also included three requests for attorney information, to which the jail responded by providing a local address for the attorney.  (Doc. 53-1 at p. 5).  The attorney request filed by the plaintiff on April 9, 2017, stated, "Its [sic] a violation to deprive me of nutrition and sanitation by making me urine and defecate in my cell.  Also feeding peanut butter and jelly sandwiches three times a day for the pass [sic] six months."  Jail personnel, identified only by number, responded, "This was not an attorney issue.  This is a grievance issue."  (Doc. 53-1 at p.5).   The kiosk filed grievances are summarized as follows:

On May 28, 2016, the plaintiff complained that someone took "3 store bought inmate pens and my legal law work out my bag . . . therefore I would like them to be returned."  On June 1, 2016, jail personnel, identified as Jones, responded, "No evidence found to substantiate your claim."  (Doc. 53-1 at p. 2).

On June 5, 2016, the plaintiff complained that it was wrongfully reported that "I refused to roll out" and the officers have been doing this "so they can put me on assault risk."  He further complained "all the correctional officers are threatening me spiting [sic] putting semen and rat poisoning in my food" and Officer Miller opened the shower to

---

[4] In his response to the Defendants' Special Reports, the plaintiff also submitted many of the same copies of relevant kiosk complaints for the time period between March 1, 2016 and August 30, 2017.  (Doc. 62-3 at pp. 2-10).

"look at me naked".  On June 13, 2016, jail personnel, identified as Jones, responded, "Documentation shows that you received your time out on 06/05".  (Doc. 53-1 at p. 2).

On June 15, 2016, the plaintiff complained that the night shift sergeant took his mat and his blanket because "I popped the sprinkler on Lt. Jones", but that he was informed at his disciplinary hearing that he would be allowed to keep the mat and blanket.  The same day jail personnel, identified as Turner, responded, "per Cmdr. Reed you are not allowed to have a mattress or a blanket due to you continually breaking sprinkler heads." (Doc. 53-1 at p. 2).

On June 19, 2016, the plaintiff complained that he "was charged for tissue that I have not received I wish . . . to have the 4 rolls that I was charged for brought to me ASAP."  On June 21, 2016, jail personnel, identified as Jones, responded, "Send this request to the commissary tab." (Doc. 53-1 at p. 3).

On June 29, 2016, the plaintiff complained that his whites were taken to be washed on the wrong day and when he did not need them washed and that his hygiene was in the laundry bag and would be destroyed if he were not allowed to retrieve it.  On July 7, 2016, jail personnel, identified as Jones, responded, "This issue has been addressed." (Doc. 53-1 at p. 3).

On July 18, 2016, the plaintiff complained that "its been 2 months and I still don't have my mat and blanket . . . its [sic] cold at night and I have large knot on my hips from sleeping on a concrete slab."  On July 20, 2016, jail personnel, identified as Jones,

responded, "Read the section of the rules that explains the discipline process for damaging or destroying jail property.  These are the guidelines followed."  (Doc. 53-1 at p. 3).

On July 21, 2016, the plaintiff complained that he "ask[ed] for . . . [his] mat and blanket during the second and forth shift two nights straight and was refused."  On July 21, 2016, jail personnel, identified as Jones, responded, "This matter has been addressed to you."  (Doc. 53-1 at p. 3).

On September 28, 2016, the plaintiff complained that he was assaulted by Lt. Moore, Sgt. Watson and Officer R.C. Jackson when they came to his cell during tray pick up.  On September 29, 2016, jail personnel, identified as Jones, responded, "This is a disciplinary issue and writing a grievance is not part of the process."  (Doc. 53-1 at p. 4).

On October 1, 2016, the plaintiff complained that his meal "was missing cheese on . . . [his] bolnge [sic] sandwich.  My peanut butter sandwich had hardly any on it and my chips only had a few that was broken up." On October 3, 2016, jail personnel, identified as Jones, responded, "You received the proper portion meal and there was no evidence found that anyone tampered with your tray."  (Doc. 53-1 at p. 4).

On October 8, 2016, the plaintiff complained that when Officers Kaylor and Duck brought him his property bag for recreation hour it was missing his bowl and tumbler. On October 12, 2016, jail personnel, identified as Jones, responded, "I will look into the matter."  (Doc. 53-1 at p. 4).

On October 10, 2016, the plaintiff complained that Officers Kaylor, Grissom and Landrea "took my socks . . . and began to search them" and that he had feces and urine on the floor of his cell.  The response of jail personnel was not provided.  (Doc. 53-1 at p. 4).

The kiosk filed chaplain requests are summarized as follows:

On March 25, 2016, the plaintiff requested unit 3 anger management which was approved by Defendant Chaplain David Baker.  (Doc. 53-1 at p. 6).

On April 1, 2016, the plaintiff requested unit 4 anger management which was approved by Defendant Chaplain David Baker.  (Doc. 53-1 at p. 6).

On May 3, 2016, the plaintiff requested the next anger management unit and stated, "Ramadon [sic] starts Thursday can you advice [sic] the kitchen worker about my trays and make sure they split my lunch tray between lunch and dinner or double them." On May 3, 2016, Defendant Chaplain David Baker responded, "Have not received completed answer sheet for Anger Management unit 4.  Also, check back to a previous request response and you will see that Ramadan does not begin until June 6 through July 5." (Doc. 53-1 at p. 6).

On May 5, 2016, the plaintiff stated, "I don't have funds to buy a Quran can you please give me one."  On May 5, 2016, Defendant Chaplain David Baker responded, "You will need to return the Holy Bible.  Due to religious material through Chaplain being donated, only one religion's material can be requested.  Cannot have both the Bible and Quran." (Doc. 53-1 at p. 6).

On May 13, 2016, the plaintiff stated, "Due to jail now serving ham at dinner I would like to request that you have them give me 2 peanut butter and jelly sandwiches." Also, he again requested a Quran.  On May 17, 2016, Defendant Chaplain David Baker responded, "Houston County Jail does not serve pork products . . .  you will need to return the Bible in order to receive Quran.  Quran and Bibles are donated and when available inmates can have only one." (Doc. 53-1 at p. 7).

On May 14, 2016, the plaintiff asked whether his anger management responses had been received.  On May 16, 2016, Defendant Chaplain David Baker responded, "I am sending you some answer sheets for the last study.  They do not have a name on them, see if they contain your handwriting."  (Doc. 53-1 at p. 7).

On June 3, 2016, the plaintiff stated "Rammadon [sic] starts Wedsneday [sic] would you please specify . . .  that brakefast [sic] should be served to me before sun rise either one and a half tray or I can save my lunch till sun set and eat it with my dinner tray or just make that one and a half trays as well."  On June 3, 2016, Defendant Chaplain David Baker responded, "Ramadan starts Monday, you will need to see the fasting agreement for Ramadan.  Supervisors and Kitchen staff are aware of you participating in Ramadan." (Doc. 53-1 at p. 7).

On June 4, 2016, the plaintiff stated, "That contract violates my religious rights . . . I am not suppose to eat while sun is up period."  On June 5, 2016, Defendant Chaplain

David Baker, responded, "This is a grievance and you should write the grievance to Grievances on Kiosk." (Doc. 53-1 at pp. 7-8).

Multiple times in August, September and October of 2016, the plaintiff requested a Bible and anger management material. Defendant Chaplain David Baker responded and provided to plaintiff both anger management material and a Bible which was replaced at least twice. (Doc. 53-1 at p. 8).

The kiosk filed inmate housing movement requests are summarized as follows:

On April 17, 2016, the plaintiff requested to see Assistant Jail Commander Brazier. On April 18, 2016, jail personnel, identified as Champion, responded this will be forwarded to Brazier. (Doc. 53-1 at p. 9).

On June 24, 2016, the plaintiff again requested to see Brazier to discuss his restricted items including his hygiene, mat and blanket because "every squad has a diffent [sic] perspective on what I can and can't have." On June 24, 2016, jail personnel, identified as Sking, responded, "All squads should be allowing the same items due to what Captain Reed has put in place for items that you should have in your cell." (Doc. 53-1 at p. 9).

On June 25, 2016, the plaintiff stated, "Well apparently all squads don't know because they all guesting [sic] what it states or they just tell me something different." On June 29, 2016, jail personnel identified as Sking, responded, "Inmate Flagg all squads should be doing the same thing as was put in place by Captain Reed. Please do not

continue to write on the same subject when you have already been given an answer to your request." (Doc. 53-1 at pp. 9-10).

On June 30, 2016, the plaintiff stated, "What part don't you understand.  I don't have nothing in writing stating my restrictions and an answer to why shit ben [sic] took from me that had nothing to do with a sprinkler.  Damn wat [sic] are you dumb?  And I know this ain't Lt. Jones responding.  You can't put it in write with Captin [sic] Reed's signature cause he ain't order it.  Sgt. Watson you did it so stop the bull shit."  On July 7, 2016, jail personnel, identified as Sking, responded, "Inmate Flagg you will receive disciplinary paperwork for this request for making this comment."  (Doc. 53-1 at p. 10).

On July 21, 2016, the plaintiff asked, "Lt. Jones how much longer am I on assault risk."  On July 21, 2016, jail personnel, identified as Turner, responded, "You are re-evaluated every 30 days."  (Doc. 53-1 at p. 10).

On July 29, 2016, the plaintiff asked, "Lt. when can I get my whites back?  I'm missing a thermo bottom 2 t-shirts and a pair of socks.  On July 29, 2016, jail personnel, identified as Sking, responded, "Inmate Flagg I do not know anything about your whites.  As far as I know they did not go out on laundry day and we do not get whites out of your bag."  (Doc. 53-1 at p. 10).

On August 2, 2016, the plaintiff stated, "Lt. you took them on 5 13 2016.  I was told I get them back after 90 day along with my mat, blanket, hygiene and bible."  On

August 4, 2016, jail personnel, identified as Sking, responded, "Inmate Flagg you have those items in your bag; I have not taken anything from you."  (Doc. 53-1 at p. 10).

In response to the defendants' special reports, the plaintiff filed numerous documents concerning his efforts to appeal grievance decisions.  (Doc. 62-2 at pp. 1-18).  These documents reflect that the plaintiff pursued his grievance appeals through the first appeal process, *id.,* but only filed a second appeal in one instance concerning access to legal work in his cell.  (Doc. 62-2 at p. 8).  Specifically, in that instance, the plaintiff filed a grievance on February 18, 2017, which was answered by Deputy Jones.   (Doc. 62-2 at p. 18).  Next, he filed a first appeal on February 23, 2017, complaining that he did not have enough time during recreation to complete his legal work and needed access to his property bag which contained his legal work in his cell.  *Id.*  His request was denied on March 21, 2017, by Deputy Sitzler stating "Disciplinary Seg receives their property bags during roll out.  All of your time should be used per inmate rules." *Id.*     Thereafter, on March 24, 2017, he filed a second appeal concerning this issue.  (Doc. 62-2 at p. 8).  This document contains no response from jail personnel on the second appeal.  *Id.*

The plaintiff also filed numerous documents, entitled Jail Incident Reports dated from March 23, 2016, through March 12, 2017.  (Doc. 62-1 at pp. 1-19).   These documents reflect that the plaintiff on numerous occasions refused to follow orders of prison officials. (Doc. 62-1 at p. 2-4, 9, 11, 15).  These documents further demonstrate that the plaintiff threw fecal matter on the cell floor (Doc. 62-1 at pp. 2-3), pushed fecal

matter out of his cell, (Doc. 62-1 at pp. 17-18), and stopped up his jail toilet with plastic wrap. (Doc. 62-1 at p. 14). Also, these documents reflect that because he was on lockdown status, the plaintiff was occasionally denied, pursuant to jail rules, access to his mat, blanket, bible, and legal work. (Doc. 62-1 at pp. 12-13, 19).

Furthermore, Houston County Jail disciplinary records filed by the defendants reflect that on September 26, 2016, at about 7:34 p.m., the plaintiff refused a deputy's request to return his tray and cup through the bean hole. Assistance was called and the deputies entered the plaintiff's cell, he continued to refuse to comply, became combative, and "began demanding his mat and blanket." He continued to resist and would not put his hands behind his back causing a deputy to deploy his O.C. spray. After he was restrained, the plaintiff was taken to the clinic, showered, observed and photos were taken. The plaintiff was returned to his cell and regular checks were made on him during the night. The plaintiff received a disciplinary for this altercation. (Doc. 46-1 at pp. 2-24). He signed an Acknowledgment of Disciplinary Due Process informing him of his right to a hearing. (Doc. 46-1 at p. 11). A hearing was held on October 4, 2016. (Doc. 46-1 at p. 6). The plaintiff plead not guilty but admitted that he refused to hand over his tray and refused to appeal. He was sentenced to 45 days in disciplinary separation. (Doc. 46-1 at pp. 4-5.)

On May 4, 2017, the plaintiff was seen on camera punching the kiosk grievance machine. (Doc. 46-1 at pp. 47-57). He received an Acknowledgment of Disciplinary

Due Process informing him of his right to a hearing but refused to sign the form.  (Doc. 46-1 at p. 57).  He plead guilty, waived his hearing and his right to appeal and was sentenced to 30 days to be served in disciplinary separation. (Doc. 46-1 at p. 54-55).

On May 13, 2017, the plaintiff was involved in an altercation with another inmate. (Doc. 46-1 at pp. 58-63).  He pled guilty and waived a hearing.  He was sentenced to 30 days to be served in disciplinary separation.  (Doc. 46-1 at p. 60).

On June 13, 2017, an incident report was completed noting that Flagg "began eating his dinner tray before sundown.  This is against observance of Ramadan."  (Doc. 46-1 at p. 64).

On August 5, 2017, the plaintiff refused Deputies' requests to put his hands through the bean hole to be cuffed so he could be escorted to the restroom.  After continuing to refuse compliance and assuming a defensive stance, he was tased and fell to the floor and was cuffed.   (Doc. 46-1 at pp. 25-42).   The plaintiff received an Acknowledgment of Disciplinary Due Process informing him of his right to a hearing but refused to sign the form.  (Doc. 46-1 at p. 38).  A hearing was held on August 17, 2017, and the plaintiff was found guilty.  He was sentenced to 45 days to be served in disciplinary separation.  (Doc. 46-1 at p. 34).    The plaintiff's attempt to appeal was denied because it was received late.  (Doc. 46-1 at p. 39).

On November 16, 2017, at 5:35 a.m., the inmate refused to give his mat to a deputy.  (Doc. 46-1 at pp. 65-70).  The plaintiff received an Acknowledgment of

Disciplinary Due Process informing him of his right to a hearing but refused to sign the

form.  (Doc.  46-1 at p. 68).  A hearing was held on November 20, 2017 and the plaintiff

was found guilty and sentenced to 10 days to be served in disciplinary separation.  (Doc.

46-1 at p. 68).  His appeal was disapproved on December 14, 2017.  (Doc. 46-1 at p. 67).

## IV. DISCUSSION

### A.  EXHAUSTION

The defendants raise the defense of exhaustion in this action.  In addressing the

requirements of 42 U.S.C. § 1997e as to exhaustion, the Eleventh Circuit has

> recognized that "[t]he plain language of th[is] statute makes exhaustion
> a precondition to filing an action in federal court." *Higginbottom v.*
> *Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting
> *Freeman v. Francis*, 196 F.3d 641, 643–44 (6th Cir. 1999)). This means
> that "until such administrative remedies as are available are exhausted,"
> a prisoner is precluded from filing suit in federal court. *See id*.
> (affirming dismissal of prisoner's civil rights suit for failure to satisfy
> the mandatory exhaustion requirements of the PLRA); *Harris v.*
> *Garner*, 190 F.3d 1279, 1286 (11th    Cir. 1999) ("reaffirm[ing] that
> section 1997e(a) imposes a mandatory requirement on prisoners seeking
> judicial relief to exhaust their administrative remedies" before ***filing*** suit
> in federal court), *modified on other grounds*, 216 F.3d 970 (11th Cir.
> 2000) (en banc); *Miller v. Tanner*, 196 F.3d 1190, 1193 (11th Cir. 1999)
> (holding that under the PLRA's amendments to § 1997e(a), "[a]n inmate
> incarcerated in a state prison . . . must first comply with the grievance
> procedures established by the state department of corrections before
> filing a federal lawsuit under section 1983."); *Harper v. Jenkin*, 179
> F.3d 1311, 1312 (11th Cir. 1999) (per curiam) (affirming dismissal of
> prisoner's civil suit for failure to satisfy the mandatory exhaustion
> requirements of § 1997e(a)); *Alexander v. Hawk*, 159 F.3d 1321, 1328
> (11th Cir. 1998) (affirming dismissal of prisoner's *Bivens* action under §

>1997e(a) for failure to exhaust administrative remedies prior to filing
>suit in federal court).

*Leal v. Georgia Dept. of Corrections*, 254 F.3d 1276, 1279 (11th Cir. 2001) (emphasis in

original).  Furthermore, the law is well-settled that "the question of exhaustion under the

PLRA [is] a threshold matter that [federal courts must] address before considering the

merits of the case.  Because exhaustion is mandated by the statute, [a federal court has]

no discretion to waive this requirement."  *Myles v. Miami-Dade County Correctional and*

*Rehabilitation Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012) (internal quotation marks

omitted) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004) and *Alexander*

*v. Hawk*, 159 F.3d 1321, 1325–26 (11th Cir. 1998)).  The court will therefore "resolve

this issue first."  *Myles*, 476 F. App'x at 366.

"When deciding whether a prisoner has exhausted his remedies, the court should

first consider the plaintiff's and the defendants' versions of the facts, and if they conflict,

take the plaintiff's version of the facts as true.  If in that light, the defendant is entitled to

have the complaint dismissed for failure to exhaust administrative remedies, it must be

dismissed.  If the complaint is not subject to dismissal at this step, then the court should

make specific findings in order to resolve the disputed factual issues related to

exhaustion."  *Myles*, 476 F. App'x at 366 (internal quotation marks omitted) (citing

*Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008).  Consequently, a district court

"may resolve disputed factual issues where necessary to the disposition of a motion to

dismiss for failure to exhaust [without a hearing].  The judge properly may consider facts

outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535 (internal citations omitted). Based on the foregoing, the Eleventh Circuit specifically rejected the argument that "disputed facts as to exhaustion should be decided by a jury [or other factfinder]." *Id.*

Upon review of the amended complaint, the defendants' special reports and the undisputed evidentiary materials filed in support thereof and the plaintiff's response to the special report and documents filed therewith, the court concludes that the defendants' motion to dismiss is due to be granted for the plaintiff's failure to exhaust his Eighth Amendment and First Amendment claims concerning his alleged deprivations of Ramadan food and review, access to sufficient toilet facilities, access to his mat, blanket and religious materials, and access to adequate water and food. It is undisputed that the Houston County Jail's grievance policy provides that an inmate may file a grievance via the kiosk system and if unsatisfied with the response may appeal to the sheriff's office personnel by obtaining an appeal form from the sheriff's office and completing it and returning it to a secure box within a specified time. If an inmate is unsatisfied with the response, this process maybe repeated a second time. (Doc. 46-2 at p. 8). The policy specifically states that "[t]he Jail has a three appeal process and the response to the third appeal is the final decision". *Id.*

In response to the defendants' special reports, the plaintiff filed numerous documents concerning his efforts to appeal grievance decisions. (Doc. 62-2 at pp. 1-18). After careful review of these documents, the court concludes that the plaintiff failed to pursue the three-appeal grievance process for all his claims with the exception of the claim pertaining to access to his legal work. *Id.* Thus, the court concludes that the plaintiff's failure to follow this administrative appeal process mandates dismissal of his Eighth Amendment and First Amendment claims concerning his alleged deprivations of Ramadan food and review, access to sufficient toilet facilities, access to his mat, blanket and religious materials, and access to adequate water and food. *Leal,* 254 F.3d at 1279.

The court is mindful that the plaintiff claims the defendants thwarted his efforts to exhaust his grievance process. (Doc. 11 at p. 3). Specifically, he claims that he was given frivolous responses to his grievances and appeals. (Doc. 62 at pp. 7, 11). However, he fails to produce any evidence to support this claim. Specifically, there is no evidence before the court that the defendants prevented the plaintiff from filing a second appeal of any of his grievances. Rather, the grievance and appeals documents before the court demonstrate that the jail had a grievance process, which was accessible to the plaintiff, that the plaintiff on numerous occasions utilized this process and that the defendants responded to his complaints.

With respect to the plaintiff's claim alleging deprivation of his access to legal work, the plaintiff filed a grievance on February 18, 2017, which was answered by

Deputy Jones.   (Doc. 62-2 at p. 18).   Next, he filed a first appeal on February 23, 2017, complaining that he did not have enough time during recreation to complete his legal work and needed access to his property bag which contained his legal work in his cell. *Id.*  His request was denied on March 21, 2017 by Deputy Sitzler stating "Disciplinary Seg receives their property bags during roll out.  All of your time should be used per inmate rules." *Id.*    Thereafter, on March 24, 2017, he filed a second appeal concerning this issue.  (Doc. 62-2 at p. 8).  This document contains no response from jail personnel on the second appeal.  *Id.*  Accordingly, the court will consider this claim on the merits.

### B.   ACCESS TO "LEGAL LAW WORK"

The plaintiff claims that he was deprived of his "legal law work" while being held in segregation in the Houston County Jail.  (Doc. 11 at p. 3).  The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in *Bounds*.  Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials.  *Lewis*, 518 U.S. at 349.  In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no . . . right [to a law library or to legal assistance].  The right that *Bounds* acknowledged was the (already well-established) right

31

of ***access to the courts***. . . .   [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'"   *Id*. at 350-351 (emphasis in original) (citations omitted).  The Court further opined *Bounds* did not require "that the State . . . enable the prisoner to ***discover grievances***, and to ***litigate effectively*** once in court. . . .   To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] . . . the Constitution requires."   *Id*. at 354 (emphasis in original).

The Court similarly determined that the mere claim of a systemic defect, without a showing of actual injury, did not present a claim sufficient to confer standing.  *Id*. at 349.  Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims.  518 U.S. at 356.  "*Bounds* . . . guarantees no particular methodology but rather the conferral of a capability — the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.  When any inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury.  *Lewis*, 518 U.S. at 356.  Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or

32

conditions of confinement. . . .  [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id*. at 356-357.  "[T]he Constitution does not require that prisoners . . . be able to conduct generalized research, but only that they be able to present their grievances to the courts — a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360.  The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts.  *Id*. at 356.  A federal district court must "scrupulously respect[] the limits on [its] role, by not . .. thrust[ing] itself into prison administration and instead permitting [p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements." *Id*. at 363 (internal quotations and citation omitted).

Flagg presents only a conclusory allegation of a constitutional violation and fails to allege any shortcomings with respect to the legal access provided to him during his confinement which actually adversely affected his efforts to pursue his claims in court. Indeed, the undisputed evidence shows that the plaintiff received his personal papers during the hour he was rolled out of his cell each day and that during this hour he was housed in the multi-purpose room of the jails where he had access to his personal legal paperwork and was allowed to work during this time.  (Doc. 49-1 at pp. 4-5:D co. 46-6 at pp. 4-5).  Although Flagg claims that this was not enough time for him to perform the

necessary legal work, he has not alleged nor shown that this limited time any way inhibited his preparation of legal documents, filing of pleadings or processing of this cause of action or any work on his criminal trial in state court.  Instead, throughout the proceedings in this case, Flagg has demonstrated he is both proficient and prolific at presenting and arguing claims of his choice to this court and has filed all pleadings and documents necessary to the disposition of this case.  Nothing in the record indicates that the challenged lack of time improperly impeded or adversely affected Flagg's efforts to pursue legal claims.  Indeed, Flagg has utterly and completely failed to come forward with any evidence that the actions about which he complains deprived him of the capability of pursuing claims in this or any other court. Hence, Flagg does not establish he suffered the requisite injury, *see Lewis*, 518 U.S. at 356, and the defendants are therefore entitled to summary judgment on the legal access claim.  *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (access to courts claim fails because plaintiff did not show any actual injury); *Chandler v. Baird*, 926 F.2d 1057, 1063 (11th Cir. 1991) (An inmate is entitled to no relief on an access to courts claim in "the absence of any indications of ultimate prejudice or disadvantage.").

## C.  PROCEDURAL DUE PROCESS – DISCIPLINARY CONFINEMENT

The plaintiff also complains that he was illegally sentenced to disciplinary segregation time without hearings and change of good time.  (Doc. 11 at p. 3).  The plaintiff fails to specifically identify dates of the infractions for which he was allegedly

deprived pre-deprivation hearings.  The defendants, however, deny these allegations and provide prison records documenting Jail incident reports, Jail disciplinary reports, and hearing reports pertaining to the process allowed plaintiff for multiple rule infractions occurring on September 26, 2016; May 4, 2017; May 13, 2017; August 5, 2017; and November 16, 2017.  (Doc. 46-1 at pp. 1-70).  The plaintiff also filed numerous documents, many of which mirror the ones filed by the defendants.  (Doc. 62-1 at pp. 1-21, 62-2 at pp. 1-22, 62-3 at pp. 1-10).

On August 29, 2016, the Eleventh Circuit Court of Appeals examined well-established Supreme Court precedent concerning pretrial detainees and their entitlement to due process safeguards in jail settings, holding for the first time that "'a [pretrial] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.'"  *Jacoby v. Baldwin County*, 835 F.3d 1338, 1349 (11th Cir. 2016) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  The Court held that, unlike a convicted prisoner,

> a pretrial detainee is not required to prove that his conditions of confinement either "exceed[] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force" or "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin* [*v. Conner*], 515 U.S. [472,] 484 [(1995)] . . .  to be entitled to the process governed by *Wolff* [*v. McDonnell*, 418 U.S. 539 (1974)].  Rather, a pretrial detainee is entitled to a due process hearing before being subjected to "conditions that amount to punishment." *Bell*, 441 U.S. at 535, 99 S. Ct. at 1872.[]

835 F.3d at 1348.  Thus, if "a pretrial detainee[] is punished for violating a jail rule, there must be a due process hearing to determine what rule he violated."  *Id*.

> To comport with *Wolff* safeguards, a pretrial detainee
>
> must receive: (1) advance written notice of the charges; (2) a written statement of the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."

*Jacoby*, 835 F.3d at 1351 (quoting *Wolff*, 418 U.S. at 564-66).

The Court has carefully and thoroughly reviewed all the records from the Houston County Jail relevant to this time period.  Importantly, the Houston County Jail records unequivocally show that for each of the five disciplinaries the plaintiff received he was given notice of the charges and a statement of the reasons for the disciplinary as well as an opportunity to call witnesses at hearings.  (Doc. 46-1 at pp. 2-70).  Additionally, the documents provided by the plaintiff demonstrate his misuse of the grievance process and his failure to follow appeal procedures in some instances. (Doc. 62-2 at pp. 2-7, 19-22). Accordingly, the Court concludes that the plaintiff's due process claims are due to be denied.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  No costs be taxed.

On or before **August 18, 2020**, the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 4th day of August, 2020.


   /s/ Stephen M. Doyle
STEPHEN M. DOYLE
UNITED STATES MAGISTRATE JUDGE